**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILSON BURGOS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 17 CV 6167** |
| | ) | |
| **v.** | ) | **Magistrate Judge Michael T. Mason** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff Wilson Burgos ("Claimant") filed a motion for summary judgment seeking to reverse the final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The Commissioner has filed a cross-motion for summary judgment asking the Court to uphold the Commissioner's final decision. For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion for summary judgment (Dkt. 21) is granted. The decision of the Commissioner is affirmed.

**I. BACKGROUND**

**A. Procedural History**

On September 9, 2014, Claimant filed an application for DIB, alleging disability beginning September 13, 2013 due to three surgeries on his left kidney, urethra repair surgery, four hernia surgeries, high blood pressure, type 2 diabetes, anxiety disorder, left heel spur, arthritis in the back, and depression. (R. 76, 88, 112, 187.) The Social Security Administration ("SSA") denied Claimant's application initially on May 4, 2015,

and upon reconsideration on August 25, 2015.  (R. 88, 104, 108-12, 118-22.)  An

Administrative Law Judge ("ALJ") held an administrative hearing on December 6, 2016.

(R. 37-75.)  On January 30, 2017, the ALJ issued a written decision denying Claimant's

DIB application.  (R. 13-36.)  The Appeals Council denied review on July 30, 2017,

making the ALJ's decision the final decision of the Commissioner.  (R. 1-5); *Haynes v.*

*Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).  This Court has jurisdiction pursuant to 42

U.S.C. § 405(g).

### B.  Relevant Medical Evidence

#### 1.  Treating Physicians

<u>Dr. Braunstein</u>

Claimant's primary care physician, Sara Braunstein, D.O., treated him from 1988

through 2016.  (*See, e.g.*, R. 63, 192, 235, 254, 1020-22, 1077-79.)  In August 2014

(the earliest an office visit with Dr. Braunstein is documented), Claimant saw Dr.

Braunstein for his annual examination.  (R. 546-49.)  At this visit, Claimant complained

of "on and off" pain in his left heel.  (R. 546.)  Although noting arthralgia (joint pain), Dr.

Braunstein's examination noted a normal range of motion and no gait problems or

tenderness.  (R. 19, 546-47.)  Dr. Braunstein saw Claimant five more times from

January 2015 through March 2016.  (R. 1030-32, 1040-42, 1059-61, 1064-66, 1074-75.)

During this time period, in August 2015, Dr. Braunstein referred Claimant to Chicago

Foot Health Centers for treatment and evaluation of Achilles tendonitis with "unspecified

laterality."  (R. 1051.)  Claimant does not dispute the ALJ's conclusion that Dr.

Braunstein's findings "indicate unremarkable musculoskeletal and neurological findings

throughout the relevant time period."  (R. 28.)

<u>Dr. Young</u>

From 1992 through 2016, urologist Michael Young, M.D., treated Claimant for kidney- and urethra-related issues.  (*See, e.g.*, R. 193, 236, 256, 932-42, 949-50.)  He has operated on Claimant numerous times, including in January 2014, when he performed a left hydrocelectomy, and in March 2016, when he placed a ureteral stent. (R. 193, 652-53, 949-50.)   At a September 20, 2013 visit (a week after Claimant's alleged disability onset date), Dr. Young noted that Claimant was feeling well overall without changes or complaints and that a scan showed "no deterioration or change in renal function" since March 2012.  (R. 308.)  Dr. Young further noted that Claimant's renal function had been stable since 2005 or 2006.  (R. 309.)  Claimant does not dispute that Dr. Young's findings indicate "generally stable findings throughout the relevant time period."  (R. 28.)

<u>Dr. Boffa</u>

Claimant described surgeon James F. Boffa, M.D., as his "hernia specialist."  (R. 51, 1016.)  In September 2012, Claimant saw Dr. Boffa for a check-up following his ventral hernia repair surgery, and he reported some mild pain at the site of the surgery. (R. 618-20.)  At subsequent visits (in February 2013, July 2013, and August 2014), Claimant continued to complain of left flank or upper quadrant pain.  (R. 607-17.)

From March through May 2015, Claimant presented to Dr. Boffa three more times for his abdominal pain.  (R. 817-22.)  At the May 2015 visit, Dr. Boffa noted that a renal scan revealed worsening left kidney perfusion and function.  (R. 817-18.)  At or around the time of this visit, Dr. Boffa also completed a two-page physician statement ("the May 2015 opinion").  (R. 827-28.)  Dr. Boffa opined that Claimant could

occasionally and frequently lift or carry a maximum of five pounds; stand and/or walk less than one hour in an eight-hour day; and sit less than two hours in an eight-hour day. (R. 827.) He further opined that Claimant had to elevate his legs eight inches for 30 minutes every two hours to reduce swelling. (*Id.*) Dr. Boffa explained that the opined-to restrictions were based on Claimant's acute abdominal wall strain and left kidney perfusion. (R. 828.) As "clinical or laboratory findings supportive of" these diagnoses, Dr. Boffa attached a March 2015 CT scan that showed a poorly perfused and poorly functioning left kidney with features consistent with the known diagnosis of hydronephrosis. (R. 828-29.)

Claimant thereafter saw Dr. Boffa in December 2015 and again in November 2016 for his abdominal pain. (R. 927-30, 1017-18.) In November 2016, Dr. Boffa recommended that Claimant wear an abdominal binder at all times for additional support. (R. 1016.)

### Dr. Siddiqui

In 2014 and 2015, Dr. Braunstein referred Claimant to Smith Centers for Foot and Ankle Care ("Smith Center"), whereupon Claimant saw Bilal Siddiqui, D.P.M., a podiatrist at Smith Center. (R. 921-24, 1054, 1072, 1076.) In April 2015, Claimant presented to Dr. Siddiqui complaining of pain at the plantar aspect of his left heel. (R. 923.) Dr. Siddiqui assessed Claimant as having plantar fasciitis. (R. 923.) Later, in August 2015, Claimant presented to Dr. Siddiqui complaining of pain at the posterior aspect of his left heel. (R. 921.) Dr. Siddiqui assessed Claimant with Achilles tendonitis, and he referred Claimant to physical therapy and instructed him to continue using a night splint. (R. 921-22.) As he did in April 2015, Dr. Siddiqui again instructed

Claimant to perform stretching exercises, apply ice, and to use New Balance shoes. (R. 922.)

### 2. State Agency Consultants

In March 2015, Claimant presented to Roopa Karri, M.D., for an internal medicine consultative examination. (R. 803-06.) Dr. Karri noted tenderness and bulging in Claimant's left flank, possibly from an incisional hernia, and that Claimant's left kidney was enlarged. (R. 805.) Dr. Karri also noted tenderness in Claimant's midthoracic and lumbar spine and mild degenerative endplate spurring at the L2-L3 level (as shown by x-ray). (R. 805-06.) Nonetheless, Claimant was able to get on and off the exam table, walk 50 feet without support, and exhibited normal strength and range of motion in his upper and lower limbs. (R. 805.)

At the SSA's initial stage of review, state agency consultant Marion Panepinto, M.D., reviewed Claimant's medical records, including Dr. Karri's consultative examination. (R. 76-87.) Dr. Panepinto opined that Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday, without any postural limitations. (R. 84-85.) Another state agency consultant, Martin Larh, M.D., M.P.H., reviewed Claimant's medical records at the reconsideration stage of review a few months later. (R. 89-103.) Dr. Lahr agreed with and affirmed Dr. Panepinto's findings. (R. 99-101.)

### C. Claimant's Hearing Testimony

Claimant testified at the December 8, 2016 hearing. (R. 40-63, 67-68.) Claimant testified that he had worked for different companies in their warehouse departments.

(*See* R. 45-49; *see also* R. 189, 214-17 (self-reports describing work history).)  He has

not worked, however, since the end of 2013, when his position was relocated.  (R. 48-

50; *see also* R. 188 (stating in self-report that he stopped working in September 2013

because his "employer was moving so I was laid off").)  Claimant then collected

unemployment from approximately January through June 2014.  (R. 43, 49-50.)  In

collecting unemployment, Claimant was required to certify that he was "ready, willing

and able to go to work" if he could find a job.  (R. 43.)

When asked what ailments prevent him from working, Claimant identified Achilles

tendonitis in his left leg, heel spurs in his right foot and corresponding waist, hip, and

low back pain, and residual pain related to his hernia surgeries.  (R. 50-51, 61-62.)

Claimant testified that he can only lift five to eight pounds; he cannot stoop or crouch;

and his abdominal binder restricts his ability to bend and reach.  (R. 51, 67-68.)

Claimant also testified that he can only stand for up to two hours before he starts to

have pain in his side, feet, and hips; after that, he must sit down for 10-15 minutes

before he can stand again.  (R. 51-52.)  According to Claimant, he could only stand, at

most, for three hours in an eight-hour day, including breaks.  (R. 58.)  Due to pain in his

hips and from his hernias, Claimant cannot sit longer than two hours.  (R. 52.)  After

sitting for two hours, he must lie on his side for about 10 minutes before he can sit back

up again.  (R. 52-53.)  Claimant also cannot walk too much because of his Achilles

tendonitis and pain in his feet, heel, hips, and sides.  (R. 53.)  For the last year or so

before the hearing, Claimant had had to lay back and elevate his feet eight to ten inches

for a half hour, two to three times each day to alleviate his hernia, heel, and hip pain.

(R. 59-60, 63.)

Claimant testified that his high blood pressure, diabetes, thyroid, and pain medications make him drowsy most of the time.  (R. 55-56, 58.)  Claimant lives with his wife and their seven-year-old son.  (R. 41.)  He drives.  (R. 42.)  He tries to walk around the house for a while during the day so he "won't be so stiff," and he will wipe the tables down.  (R. 56-57.)  Otherwise, though, his wife "does everything," such as the cooking and cleaning, and she takes care of their son most of the time.  (R. 57.)

### D.  Vocational Expert Testimony

A vocational expert ("VE") also testified at the hearing.  (R. 63-74.)  The VE testified that a hypothetical individual with the same restrictions as Claimant could not perform his past relevant work, but he could work in light, unskilled jobs such as a cashier, a mail clerk, or a sales clerk employed at a self-service store.  (*Compare* R. 24 (the ALJ's RFC assessment), *with* R. 65-66 (hypothetical number 3 to the VE).)  But if the hypothetical individual also needed an "at will" sit/stand option and the ability to elevate his legs to waist level for 30 minutes every two hours, the leg elevation requirements would preclude other work.  (R. 66-67.)  The VE also testified that an individual who could not be on his feet for more than approximately three hours in a day would not be able to perform any light exertional occupation.  (R. 73-74.)

Additionally, the VE testified that at the unskilled level, employer tolerances for off-task time would not exceed 10 percent of the work time, i.e., "no more than about six minutes an hour and then in addition to normal breaks."  (R. 71.)  As such, being off-task for whatever reason more than 10 percent of the day (outside normal breaks) would preclude unskilled work altogether.  (*Id.*)

## II.  ANALYSIS

## A.  Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and is free from legal error.  42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).  Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (citations and quotations omitted).  Although this Court must consider the entire administrative record, it will "not 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner.'"  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).  Nonetheless, this Court will "conduct a 'critical review of the evidence'" and will not let the Commissioner's "decision stand 'if it lacks evidentiary support or an adequate discussion of the issues.'"  *Id.* (quoting *Steele*, 290 F.3d at 940).  In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from the evidence to his conclusion."  *Clifford*, 227 F.3d at 872.  In other words, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure [the Court] that the ALJ considered the important evidence . . . [and to enable the Court] to trace the path of the ALJ's reasoning.'"  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

## B.  Analysis Under the Social Security Act

To qualify for DIB, a claimant must be "disabled" under the Social Security Act. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016).  A person is disabled if "he or she has an inability to engage in any substantial gainful

activity by reason of a medically determinable physical or mental impairment which . . .
has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the
ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently
employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's
impairment is one that the Commissioner considers conclusively disabling, (4) if the
claimant does not have a conclusively disabling impairment, whether [he] can perform
past relevant work, and (5) whether the claimant is capable of performing any work in
the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The
claimant has the burden of establishing disability at steps one through four. *Young v.
Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). If the claimant
reaches step five, the burden then shifts to the Commissioner to show that "the claimant
is capable of performing work in the national economy." *Zurawski v. Halter*, 245 F.3d
881, 886 (7th Cir. 2001).

The ALJ here followed this five-step inquiry. At step one, the ALJ found that
Claimant had not engaged in substantial gainful activity since his alleged disability onset
date, September 13, 2013. (R. 18.) At step two, the ALJ determined that Claimant had
the following severe impairments: a hernia and a congenital defect of left kidney
requiring stent placement with intermittent replacement (hydronephrosis). (*Id.*) At step
three, the ALJ concluded that Claimant did not have an impairment or combination of
impairments that met or medically equaled the severity of one of the impairments listed
in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listing of Impairments"). (R. 23.)

Next, the ALJ assessed Claimant's residual functional capacity ("RFC"), which "is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The ALJ found that Claimant could "perform light work as defined in 20 CFR 404.1567(b) except: no ladders, ropes and scaffolds; occasional stooping or crouching; [Claimant] would need to wear an abdominal binder; with a sit/stand option such that after standing for one hour, [Claimant] can sit for five minutes and then stand again." (R. 24.) At step four, the ALJ concluded that Claimant was unable to perform any past relevant work. (R. 29.) At step five, though, the ALJ determined that there were jobs existing in significant numbers in the national economy that Claimant could perform, such as cashier, mail clerk, and sales clerk. (R. 29-30.) As a result, the ALJ found that Claimant had not been disabled at any time since September 13, 2013, his alleged disability onset date, through the date of the ALJ's decision, January 30, 2017. (R. 16, 30-31.)

Claimant challenges the ALJ's decision on a number of grounds. The Court addresses each argument below.

### C. The ALJ Articulated Sufficient Reasons for Giving Dr. Boffa's May 2015 Opinion Little Weight.

The Court first addresses Claimant's contention that the ALJ did not provide good reasons for assigning little weight to the May 2015 opinion of his treating surgeon, Dr. Boffa. At issue are those portions of Dr. Boffa's May 2015 opinion where he opined that Claimant could only lift and carry up to five pounds, stand and/or walk for less than an hour, and sit for less than two hours, and that Claimant had to elevate his legs eight inches for 30 minutes every two hours during the day. (R. 827.)

An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" by medical evidence and "not inconsistent with the other substantial evidence" in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2).[1] Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). For example, an ALJ may discount a treating physician's opinion "if it is internally inconsistent or contradicted by other substantial medical evidence in the record. *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012). Ultimately, the ALJ need only "minimally articulate" her reasons for discounting a treating physician's opinion, a threshold that the Seventh Circuit has characterized as "lax" and a "low bar." *See Id.*; *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Gully v. Colvin*, 593 F. App'x 558, 563-64 (7th Cir. 2014).

In deciding to give Dr. Boffa's May 2015 opinion "little weight" (R. 27), the ALJ here met this standard. First, the ALJ reasoned that Dr. Boffa had a "limited treating relationship" with Claimant. (R. 27-28.) Claimant attacks this reasoning by asserting that Dr. Boffa "had a more intimate treating relationship with [Claimant] than any other physician in the case," but he does not supply any further explanation or evidentiary citation for this assertion. (Dkt. 14 at 12.) As the Court is left wondering what Claimant means by a "more intimate" treating relationship, or why it matters, this undeveloped

---

[1] In January 2017, the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

argument is waived. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008).

Second, the ALJ found that Dr. Boffa did not "provide objective support for his conclusions." (R. 27-28.) The Court agrees. Although Dr. Boffa's May 2015 opinion identified a March 2015 CT scan showing Claimant's poorly perfused and functioning left kidney as a supportive "clinical or laboratory finding" (R. 828-29), the Court cannot glean anything (nor does Claimant identify anything) from this scan that supports Dr. Boffa's lifting, carrying, standing, walking, sitting, and leg elevation restrictions. Nor does Dr. Boffa's "acute abdominal wall strain" diagnosis itself (R. 828) provide a basis for these restrictions. Simply identifying a diagnosis "proves nothing," as a diagnosis "does not automatically translate to a limitation or impairment." *Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012); *see Weaver v. Berryhill*, --- F. App'x ----, 2018 WL 3996853, at *3 (7th Cir. Aug. 20, 2018) (explaining that a diagnosis does not mean that the impairment imposes any particular restrictions on one's ability to work). Similarly, the mere fact that Claimant had already undergone abdominal and kidney surgeries does nothing to show that the restrictions assessed by Dr. Boffa in May 2015 were reasonable or supported by the evidence. (*See* Dkt. 23 at 3-4.) The ALJ permissibly discounted Dr. Boffa's May 2015 opinion based on his failure to support it with objective medical evidence. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) ("An ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings.").

Third, the ALJ was permitted to discount Dr. Boffa's opinion because she found it inconsistent with the findings of Claimant's primary care provider, Dr. Braunstein, and

his urologist, Dr. Young.  (R. 28); *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013) ("An ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record.").  According to the ALJ, examinations by Drs. Braunstein and Young indicated unremarkable and generally stable findings and that conservative treatment and physical therapy had helped to manage Claimant's complaints (as opposed to the extreme limitations recommended by Dr. Boffa).  (R. 28.)  Claimant does not dispute the accuracy of this recitation of the evidence.  Instead, he contends that the ALJ "indulged in sleight-of-hand" by contrasting Dr. Boffa's opinion with reports from doctors who were not as familiar with Claimant's abdominal wall strain.  (Dkt. 14 at 12-13.)  He also contends that the ALJ erred by not addressing the physicians' specialties when weighing their opinions.  (Dkt. 23 at 6-7.)  But a physician's specialty and his familiarity with a patient's condition are only two factors to be considered in weighing a physician's opinion.  20 C.F.R. § 404.1527(c)(2)(ii), (5).  Even if Dr. Boffa had the most familiarity with, and specialized knowledge about, Claimant's abdominal wall strain, Claimant has not shown that the ALJ erred in finding that Dr. Boffa's May 2015 opinion was inconsistent with the other medical evidence and unsupported by objective evidence.  And either of these findings supports the ALJ's decision not to give controlling weight to the opinion.  *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 287-88 (7th Cir. 2002).

Lastly, the ALJ believed that Dr. Boffa's opinion was inconsistent with Claimant's own reported activities, such as "driving a vehicle, socializing, going to the grocery store for one hour, and performing household activities (clean table, sweep, fold clothes)." (R. 28.)  Although Claimant argues that these activities do not show that he is able to

work eight hours a day, five days a week (Dkt. 23 at 5), that is beside the point.  The relevant question is whether the ALJ erred in finding that these reported activities were inconsistent with Dr. Boffa's assessed restrictions.  Claimant does not make any attempt to explain why his reported daily activities are not inconsistent with Dr. Boffa's restrictions, thus waiving any argument on this issue.  *See Argyropoulos*, 539 F.3d at 738.  Regardless, the ALJ already gave sufficient reasons to support her decision to give Dr. Boffa's May 2015 opinion little weight, irrespective of any error in her analysis of Claimant's reported daily activities.  *See Berger*, 516 F.3d at 545 (upholding an ALJ's evaluation of medical opinions because, although it "might not have been flawless," it "rested on a sufficient factual basis to support [the] ultimate conclusion"); *see also Givens*, 551 F. App'x at 860-61 (upholding the ALJ's decision to give little weight to an examining physician's opinion where it was supported by two adequate explanations).

Under the "lax" standard set forth by the Seventh Circuit, the ALJ here minimally articulated sufficient, supported reasons for giving Dr. Boffa's May 2015 opinion little weight.  The Court therefore upholds the ALJ's decision to do so.

### D.  Claimant Has Not Shown That the ALJ's Subjective Symptom Evaluation Was "Patently Wrong."

The Court next turns to Claimant's contention that "[t]he reasons the ALJ gave for discrediting [Claimant] and disregarding his subjective symptoms were inadequate." (Dkt. 14 at 9.)  To evaluate a claimant's subjective symptom statements, the ALJ must follow a two-step process.  First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce" the claimant's symptoms.  SSR 16-3p, 2016 WL 1119029, at *2

(Mar. 16, 2016).[2]  Then, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities."  *Id.*  This evaluation is given "special deference": so long as the ALJ explains her subjective symptom evaluation with "specific reasons supported by the record," this Court will not overturn it unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).  The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is "patently wrong."  *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018).

Here, the ALJ found that Claimant's impairments could be reasonably expected to produce her alleged symptoms (step one), but she concluded that Claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (step two).  (R. 25.)  The ALJ justified this assessment on the following grounds: (1) "a lack of objective findings to support the degree of restriction alleged" and (2) "significant inconsistencies in the record as a whole."  (*Id.*)  Claimant has not demonstrated that either justification was patently wrong.

Claimant's primary attack on the ALJ's first justification invokes the principle that "symptoms cannot be disregarded solely because they are not substantiated by

---

[2] SSR 16-3p supersedes SSR 96-7p and its focus on "credibility," clarifying "that subjective symptom evaluation is not an examination of the individual's character."  *See* SSR 16-3p, 2016 WL 1119029, at *1. In 2017, the SSA clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016.  *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017).  Because the ALJ issued her opinion on January 30, 2017 (R. 31), SSR 16-3p applied.  *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, at n.27.

objective medical evidence." (Dkt. 14 at 9; Dkt. 23 at 2.) But the ALJ did not disregard Claimant's symptoms based *solely* on a lack of supporting objective evidence; she discounted Claimant's symptoms because of *both* a lack of supporting objective evidence *and* "significant inconsistencies in the record as a whole." (R. 25); *see also Keys v. Berryhill*, 679 F. App'x 477, 481-82 (7th Cir. 2017) (noting that the ALJ did not reject the claimant's testimony based solely on a lack of objective medical evidence when it found the testimony inconsistent with prior statements made to treating physicians). The ALJ can consider the lack of supporting objective evidence to discount a claimant's symptoms so long as she relies on other factors as well. *See, e.g.*, *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (explaining that "even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain," "the lack of objective support from physical examinations and test results is still relevant"); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (explaining that an ALJ can consider, along with other factors, "the lack of objective evidence in rejecting a claimant's subjective complaints"). That is what the ALJ did here.

In his reply brief, Claimant asserts for the first time that the evidence "of his recurring hernias, hernia surgeries, kidney problems, and ureter surgeries" support his subjective complaints. (Dkt. 23 at 2.) But how does the mere fact that Claimant has undergone surgeries for certain types of ailments show that his various complaints are credible? Claimant provides no explanation, and he makes no attempt to link the evidence he cites to any of his subjective complaints. (*Id.*) This undeveloped argument—which, in any event, should have been raised in Claimant's opening memorandum—is therefore waived. *Argyropoulos*, 539 F.3d at 738; *Rogers v.*

*Barnhart*, 446 F. Supp. 2d 828, 851 (N.D. Ill. 2006) (holding that an argument that "could easily have been raised in the opening brief" was waived).[3]

Notably, Claimant does not challenge the other justification underlying the ALJ's subjective symptom evaluation: "significant inconsistencies in the record as a whole." (R. 25.)  This was also a permissible factor for the ALJ to consider in evaluating Claimant's symptoms, as inconsistencies between the evidence and Claimant's allegations "may suggest symptom exaggeration."  *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *see Curvin*, 778 F.3d at 651 (upholding subjective symptom evaluation based on various inconsistencies between the claimant's alleged symptoms and other evidence); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (finding that "[a]n ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole"); 20 C.F.R. § 404.1529(c)(4) (June 13, 2011 to Mar. 26, 2017) (explaining that in evaluating a claimant's symptoms, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence").  Yet Claimant makes no attempt to show why the ALJ erred in finding his subjective symptom complaints inconsistent with the record as a whole.

Instead, Claimant focuses on perceived errors in the ALJ's assessment of his activities of daily living, as reported by himself and his wife.  (Dkt. 14 at 9-12.) Admittedly, the ALJ's evaluation of Claimant's daily living activities has its flaws.  To start, the Court does not see how Claimant's ill-advised decision to start a snow blower,

---

[3] Claimant also asserts without elaboration that the ALJ did not address medication side effects and that "[n]oncompliance or lack of treatment will not result in a negative inference unless reasons for it are evaluated."  (Dkt. 23 at 2.)  These perfunctory and undeveloped assertions are likewise waived.

which caused him to visit Dr. Boffa complaining of flank pain, shows that Claimant can perform at the RFC assessed by the ALJ.  (R. 28, 598); *cf. Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (finding that the performance of an "ill-advised activity" that led to a doctor's visit could not support the conclusion that the claimant "was capable of performing full-time work").  Moreover, most of the ALJ's discussion is simply listing activities reported by Claimant and his wife without any accompanying explanation as to how these activities are consistent with the assessed RFC or inconsistent with Claimant's allegations.  (R. 28-29.)  This is insufficient: "[t]he mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment."  *Nelson v. Colvin*, No. 13 C 2902, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016) (citing *Clifford*, 227 F.3d at 872).  An ALJ should explain any purported inconsistencies between daily activities, subjective complaints, and the medical evidence.  *Zurawski*, 245 F.3d at 887.

Nonetheless, the ALJ's imperfect treatment of Claimant's daily activities did not render the entirety of her subjective symptom evaluation "patently wrong."  In *Richards v. Berryhill*, the Seventh Circuit recently upheld a subjective symptom evaluation despite the ALJ's "shaky" consideration of the claimant's daily activities because the evaluation was otherwise supported by "specific reasons supported by the record."  743 F. App'x 26, 29 (7th Cir. 2018); *see also Kittelson v. Astrue*, 362 F. App'x 553, 557-58 (7th Cir. 2010) (upholding a subjective symptom evaluation despite the ALJ's erroneous analysis of the claimant's daily activities because the evaluation rested on an additional, valid reason).  Similarly, the ALJ's adverse subjective symptom assessment here was supported by two reasons—a lack of supporting objective medical evidence and

significant inconsistencies in the evidentiary record—that have not been shown to be erroneous.  Despite the ALJ's "shaky" daily activities analysis, these reasons were enough to support the ALJ's subjective symptom assessment.  *See Richards*, 743 F. App'x at 29-30; *Kittelson*, 362 F. App'x at 557-58; *see also Vanover v. Colvin*, 627 F. App'x 562, 566-67 (7th Cir. 2015) (upholding a subjective symptom evaluation despite the ALJ's failure to "provide a valid explanation for discrediting [the claimant] based on the extent of her daily activities" where the other reasons supporting the evaluation were not challenged by the claimant).

Lastly, Claimant claims that his collection of unemployment benefits could not be used to discount his subjective symptoms, as asserted by the Commissioner, because if the work he was seeking was either part-time or only sedentary work, his disability claim would have still been allowed.  (Dkt. 23 at 2-3; Dkt. 21 at 17-18.)  Both parties' assertions are unpersuasive.  For his part, Claimant fails to show that his posited hypothetical is even applicable, as he does not point to any evidence that he in fact sought part-time or sedentary work when he applied for and received unemployment benefits.  And although the receipt of unemployment benefits can in some circumstances be relevant to a subjective symptom evaluation, *Richards*, 743 F. App'x at 29, the Commissioner does not identify any portion of the ALJ's decision where she relied upon this fact to support her subjective symptom evaluation.  Thus, it cannot be used on appeal to support the ALJ's evaluation.  *Scott*, 647 F.3d at 739 (explaining that the court's review is confined "to the rationale offered by the ALJ").

In short, although Claimant may have shown that the ALJ's subjective symptom evaluation "was not perfect," he did not show that it was "patently wrong," as it was

supported by enough valid reasons.  *See Kittelson*, 362 F. App'x at 557; *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (explaining that not all of an ALJ's reasons for a subjective symptom assessment "must be valid as long as *enough* of them are) (emphasis in original).  Thus, the Court affirms the ALJ's subjective symptom evaluation.

### E.  The ALJ Adequately Evaluated Claimant's Need to Elevate His Legs and Drowsiness Caused by His Medications.

Claimant also contends that the ALJ did not adequately evaluate two lines of evidence: (1) Claimant's testimony about his need to elevate his legs for a half hour, two to three times a day; and (2) Claimant's testimony about how his medications make him drowsy.  As Claimant concedes, the ALJ acknowledged this testimony in her decision. (R. 25; Dkt. 14 at 3.)  Nonetheless, Claimant asserts that the ALJ failed to minimally articulate how this testimony affected her assessment of Claimant's subjective symptom statements and his RFC.  (Dkt. 14 at 3-5.)  The Court disagrees.

In assessing Claimant's subjective symptom statements, the ALJ was "not required to discuss every piece of evidence," including Claimant's testimony about his need to elevate his legs and about his medication-induced drowsiness.  *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013); *accord Petrie v. Colvin*, No. 12 C 4682, 2014 WL 72544448, at *3 (N.D. Ill. Dec. 18, 2014) (finding that ALJs "are not required to explicate every piece of evidence that figures into their credibility findings").  "It is enough that in view of the record as a whole, the ALJ's determination rests on substantial evidence."  *Sawyer*, 512 F. App'x at 608.  Here, as discussed above, the ALJ's subjective symptom evaluation rests on sufficient reasons supported by the record.  Thus, the ALJ minimally articulated her reasons for her adverse subjective

symptom evaluation, and Claimant's argument on this point fails.  *See Petrie*, 2014 WL 7254448, at *3.

Claimant's argument about the ALJ's RFC assessment fails as well.  Although an ALJ must consider the testimony of the claimant in developing an RFC, *Craft*, 539 F.3d at 675-76, she need only incorporate those restrictions that she deems credible.  *See Strysik v. Colvin*, No. 13 CV 7723, 2015 WL 8481953, at *7 (N.D. Ill. Dec. 10, 2015). The ALJ expressly incorporated additional restrictions "to accommodate subjective complaints as best supported by the evidence of record," i.e., complaints that she found credible.  (R. 27.)  Accordingly, by *not* incorporating an off-task allowance or other restriction to address Claimant's testimony about medication drowsiness and leg elevation, the ALJ necessarily did not find that testimony credible.  *See Jones*, 623 F.3d at 1160 (noting that a reviewing court gives the ALJ's decision a commonsensical reading).  True, it might have been clearer if the ALJ had stated that she found this particular testimony not credible, but "an ALJ's credibility findings need not specify which statements were not credible."  *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).  In the end, the ALJ's adverse subjective symptom evaluation (which the Court is upholding on review), combined with the ALJ's failure to impose any RFC restrictions to address Claimant's testimony about his need to elevate his legs and the drowsiness caused by his medication, articulate the ALJ's analysis of this testimony "in a manner sufficient to permit an informed review."  *See Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988).

### F.  The ALJ Did Not Fail to Adequately Evaluate Claimant's Achilles Tendonitis.

Lastly, Claimant contends that the ALJ erred by failing to evaluate his Achilles tendonitis and, specifically, by failing to obtain an updated medical expert opinion of medical equivalency.  As an initial matter, "medical equivalency" refers to a finding that a claimant's "impairment is accompanied by symptoms that are equal in severity to those described" in a listing from the Listing of Impairments, which would mean that the claimant is presumptively disabled.  *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *see also* SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996) (cited by Claimant) (discussing when an updated medical opinion may be needed in the context of determining "Medical Equivalence to an Impairment in the Listing of Impairments").  Yet Claimant does not argue that his Achilles tendonitis medically equals any listing from the Listing of Impairments.  Thus, "medical equivalency" is not even at issue.[4]

What Claimant in fact appears to argue is that the ALJ was obligated to call a medical expert to determine how his Achilles tendonitis would have functionally limited him.  The cases cited by Claimant, though, do not impose such an obligation.  (*See* Dkt. 23 at 6 (citing *Moreno v. Berryhill*, 882 F.3d 722, 728-29 (7th Cir. 2018)); Dkt. 14 at 13-14 (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) and *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).)  Instead, they stand for the proposition that "[a]n ALJ should not rely on an outdated [medical] assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."  *Moreno*, 882 F.3d at 728 (citing *Stage*, 812 F.3d at 1125 and *Goins*, 764 F.3d at 680).  In each of these cases, the record contained new, significant, and potentially

---

[4] Moreover, SSR 96-6p only requires an updated medical expert opinion on medical equivalency in two particular sets of circumstances, neither of which Claimant contends are present here.  SSR 96-6p, 1996 WL 374180, at *3-4.

decisive evidence that could have changed the already-existing medical opinions. *Moreno*, 882 F.3d at 725, 728 (noting that treating notes revealed "significant and new developments" in the claimant's mental health that could have affected the non-examining consultant's opinion); *Stage*, 812 F.3d at 1125 (finding that a physician's evaluation "contained significant, new, and potentially decisive findings" that could have changed the reviewing physician's opinion); *Goins*, 764 F.3d at 680 (finding that the ALJ erred by failing to submit to "medical scrutiny . . . new and potentially decisive medical evidence" that undermined the reasoning of a consulting physician). Here, however, Claimant makes no claim that his Achilles tendonitis was a new, significant, or potentially decisive medical diagnosis that would have changed any of the medical opinions in the record. *See Keys*, 679 F. App'x at 480-81 (finding that the ALJ did not err by relying upon medical opinions that did not consider later MRIs because the claimant did not explain how the MRIs undermined these opinions).

Nor has Claimant shown that the ALJ abused her discretion in not calling a medical expert. *See Simonetti v. Colvin*, No. 13 CV 04394, 2014 WL 4063110, at *10 (N.D. Ill. Aug. 11, 2014) ("The ALJ can decide to secure a medical expert, but it is not mandatory."). Indeed, Claimant does not explain why the ALJ should have had any reason to believe that a medical expert was necessary to opine about his Achilles tendonitis. Claimant's Achilles tendonitis is only mentioned twice in 800-plus pages of medical records. (Dkt. 14 at 13; R. 921, 1051.) Just as an ALJ "cannot be expected to discuss every symptom mentioned in an extensive medical history," *Hodges v. Barnhart*, 399 F. Supp. 2d 845, 859 (N.D. Ill. 2005), the ALJ here could not be expected

to engage a medical expert to testify about every diagnosis Claimant received during his years of treatment, especially one that appears only briefly in the medical record.

Claimant also has not shown that the ALJ failed to articulate "even at a minimal level" why his Achilles tendonitis did not affect the assessment of Claimant's subjective symptom allegations or RFC. (Dkt. 23 at 6.) The ALJ acknowledged Claimant's testimony that he was "unable to work due to left Achilles tendonitis" (R. 25), and the RFC's failure to include corresponding restrictions means that the ALJ did not find Claimant's testimony about his Achilles tendonitis credible. As discussed above, the ALJ's credibility finding has not been shown to be "patently wrong." Moreover, given that the ALJ was not required to "provide a complete written evaluation of every piece of evidence," *Hodges*, 399 F. Supp. 2d at 859, the Court cannot fault the ALJ for failing to engage in a more detailed discussion about a diagnosis that appears only twice in over 800 pages of medical records.

In any event, Claimant has not explained how the ALJ's purportedly inadequate analysis deprived him of a more restrictive RFC that would have led to a finding of disability. (Dkt. 14 at 13-14; Dkt. 23 at 6); *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that it is the claimant's burden to show that an agency's determination is harmful). Put another way, Claimant has not shown how being diagnosed with Achilles tendonitis affected his ability to work in a way not already captured by the ALJ's RFC assessment. In similar circumstances, the Seventh Circuit has found that a claimant fails to show that the ALJ reversibly erred. *See, e.g.*, *Truelove v. Berryhill*, --- F. App'x ----, 2018 WL 6242284, at *4 (7th Cir. Nov. 28, 2018) (rejecting arguments about the ALJ's mental health analysis because the claimant failed

"to identify or point to evidence of any functional limitations the ALJ should have imposed that would take proper account of his mental impairments"); *Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018) (holding that the claimant waived her contention that the ALJ "erred by not including any limitations regarding fibromyalgia in the RFC" because she did "not explain how the ALJ's RFC finding [was] incompatible with her fibromyalgia symptoms, nor [did] she suggest what limitations should have been included"). Claimant has likewise failed to show reversible error here.

## III. CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion for summary judgment (Dkt. 21) is granted. The Commissioner's final decision is affirmed. It is so ordered.

**DATED: January 29, 2019**

**Magistrate Judge Michael Mason**